In the

# United States Court of Appeals

### For the Seventh Circuit

No. 15-1098

MARTINA BEVERLY,

                              *Plaintiff-Appellant*,

            *v.*

ABBOTT LABORATORIES,

                              *Defendant-Appellee*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 12 CV 3216 — **Edmond E. Chang**, *Judge.*

ARGUED SEPTEMBER 9, 2015 — DECIDED MARCH 16, 2016

Before EASTERBROOK, KANNE, and WILLIAMS, *Circuit Judges*.

WILLIAMS, *Circuit Judge.* Martina Beverly sued her former employer, Abbott Laboratories (Abbott), for employment discrimination and retaliation. During a private mediation, the parties signed a handwritten agreement stating that Beverly demanded $210,000 and mediation costs in exchange for dismissing the lawsuit. Abbott later accepted Beverly's de-

mand and circulated a more formal settlement proposal. After Beverly refused to execute this draft proposal, Abbott moved to enforce the original handwritten agreement.

The district court found that the parties entered into a binding settlement agreement and granted Abbott's motion to enforce. Beverly appeals this decision, arguing that Abbott intended to be bound only by the terms of the typewritten proposal and that the handwritten agreement omits certain material terms.

However, we find that the handwritten agreement was valid and enforceable, since the agreement's material terms were clearly conveyed and consented to by both parties, and the existence and content of the draft proposal do not affect enforceability. Therefore, we affirm the district court's grant of Abbott's motion to enforce.

## I.  BACKGROUND

Beverly is a former Abbott employee whose employment was terminated on October 20, 2010. A year and a half later, she filed suit against Abbott. She alleged that during her employment with the company, Abbott had discriminated and retaliated against her on the basis of her German nationality in violation of Title VII of the Civil Rights Act, as well as on the basis of her disabilities in violation of the Americans with Disabilities Act. The district court denied Abbott's motion for summary judgment as to Beverly's national origin claims and certain of her disability claims, and the parties engaged in a private mediation.[1]

---

[1] Beverly's husband, Henry, is also a named plaintiff in the lawsuit against Abbott. The district court granted Abbott's motion for summary

Case: 1:12-cv-03216 Document #: 144 Filed: 04/07/16 Page 3 of 13 PageID #:1883
Case: 15-1098   Document: 00712735573   Filed: 04/07/2016   Pages: 13

No. 15-1098 3

A day before the mediation took place, Abbott's counsel sent Beverly's counsel a "template settlement agreement" in order to avoid "any surprises in the event that [the parties] are able to resolve the matter." This template included six typewritten pages and provided, among other things, that Beverly had twenty-one days to review the document and seven days to revoke her acceptance; that Beverly would release and waive any and all claims against Abbott and its affiliates; that Abbott would send two separate checks to Beverly and a third check to Beverly's attorneys for unspecified amounts; and that Abbott would pay all mediation costs.

The mediation session lasted approximately fourteen hours and both parties were represented by counsel the entire time. Near the end of the session, both parties and their counsel signed a handwritten agreement that stated:

> I Jon Klinghoffer will commit that my client will communicate to its internal business client the fact that Abbott/AbbVie has offered $200,000 + Abbott/AbbVie pays cost of mediation to resolve this matter and that Martina Beverly has demanded $210,000 + Abbott/AbbVie pays cost of mediation to resolve this matter. Both parties committ [sic] that their offer and demand will remain open until Tuesday, July 22, 2014, 3:00 PM central.

On the following day, Abbott's counsel emailed Beverly's counsel and stated, "My client has accepted Martina Beverly's demand to resolve her claims in the above referenced matter for $210,000 plus the costs of yesterday's mediation. I

---

judgment as to all of Henry's claims; however, this appeal does not concern that decision or any of Henry's claims. Unless otherwise specified, all references to "Beverly" in this opinion concern Martina.

Case: 1:12-cv-03216 Document #: 144 Filed: 04/07/16 Page 4 of 13 PageID #:1884
Case: 15-1098    Document: 00712735573    Filed: 04/07/2016    Pages: 13

4                                                              No. 15-1098

have attached a draft settlement agreement for your review." This draft was largely identical to the template settlement agreement sent two days earlier, with three exceptions: (1) the replacement of "Abbott" with "AbbVie"[2]; (2) the inclusion of the precise dollar amounts to be paid to Beverly ($23,000 for damages, $23,000 for backpay) and to her attorneys ($164,000); and (3) the exclusion of a provision preventing Beverly from disparaging Abbott or AbbVie.

Approximately five minutes after receiving the email from Abbott's counsel, Beverly's counsel responded via email and stated, "Oh happy days! Best $10,000 Abbott has ever spent. You are a gem." Several minutes later, Beverly's counsel forwarded the Abbott counsel's email and draft proposal to Beverly for review. Beverly ultimately declined to sign the proposal.

Abbott filed a motion to enforce the handwritten agreement. In the motion, Abbott argued that the agreement was enforceable because an offer, acceptance, and meeting of the minds had occurred, and that the parties' subsequent inability to execute the typewritten proposal was irrelevant. In response, Beverly argued that the handwritten agreement was merely a preliminary document that captured the parties' intention to execute a binding settlement agreement in the future. She also contended that the omission of multiple ma-

---

[2] In January 2013, Abbott split into two separate publicly traded companies. One company (the "new" Abbott) primarily focuses on the production of medical devices, diagnostic products, and infant formula, while the other company (AbbVie) primarily focuses on the research and development of certain pharmaceutical products. The parties do not call attention to this corporate distinction, and it does not appear to be relevant for purposes of this dispute.

No. 15-1098 5

terial terms from the handwritten agreement illustrated its non-binding nature.

The district court granted Abbott's motion, finding that the parties had entered into a binding settlement agreement that included all material terms—specifically, the dismissal of the case in exchange for $210,000 and mediation costs. Beverly appeals this decision.

## II. ANALYSIS

On appeal, Beverly argues that the district court erred by granting Abbott's motion to enforce the handwritten settlement agreement. We disagree. We review the district court's decision to enforce the settlement agreement for abuse of discretion. *Hakim v. Payco-Gen. Am. Credits, Inc.*, 272 F.3d 932, 953 (7th Cir. 2001). However, the question of whether a settlement agreement exists is a question of law that we review de novo. *Newkirk v. Village of Steger*, 536 F.3d 771, 774 (7th Cir. 2008).

### A. Handwritten Agreement Enforceable

State contract law governs issues concerning the formation, construction, and enforcement of settlement agreements. *Sims-Madison v. Inland Paperboard & Packaging, Inc.*, 379 F.3d 445, 448 (7th Cir. 2004) (citing *Pohl v. United Airlines, Inc.*, 213 F.3d 336, 338 (7th Cir. 2000)). Both parties rely on Illinois law to support their arguments, so we too will look to that body of substantive law. Under Illinois law, the existence of a valid and enforceable contract is a question of law when the basic facts are not in dispute. *Echo, Inc. v. Whitson Co.*, 121 F.3d 1099, 1102 (7th Cir. 1997). A settlement agreement is enforceable if there was a meeting of the minds or mutual assent to all material terms. *Abbott Labs. v. Alpha*

Case: 1:12-cv-03216 Document #: 144 Filed: 04/07/16 Page 6 of 13 PageID #:1886
Case: 15-1098     Document: 00712735573     Filed: 04/07/2016     Pages: 13

6                                                          No. 15-1098

*Therapeutic Corp.*, 164 F.3d 385, 387 (7th Cir. 1999) (citing *SBL Assoc. v. Village of Elk Grove*, 617 N.E.2d 178, 182 (Ill. 1993)). Material terms are sufficiently definite and certain when they enable a court to ascertain what the parties agreed to do. *K4 Enters., Inc. v. Grater, Inc.*, 914 N.E.2d 617, 624 (Ill. App. Ct. 2009) (citing *Midland Hotel Corp. v. Reuben H. Donnelly Corp.*, 515 N.E.2d 61, 65 (Ill. 1987)).

Illinois follows the objective theory of intent whereby the written records of the parties' actions—rather than their subjective mental processes—drive the inquiry. *Newkirk*, 536 F.3d at 774; *see also Int'l Minerals & Chem. Corp. v. Liberty Mut. Ins. Co.*, 522 N.E.2d 758, 764 (Ill. App. Ct. 1988) ("The paramount objective is to give effect to the intent of the parties as expressed by the terms of the agreement.").

When a settlement agreement concerns federal claims in the employment discrimination context, we typically inquire whether the agreement was knowingly and voluntarily executed based on the totality of the circumstances. *Dillard v. Starcon Int'l, Inc.*, 483 F.3d 502, 507 (7th Cir. 2007). This inquiry is unnecessary here, however, since Beverly did not contend during the district court proceedings, and does not contend on appeal, that she executed the handwritten agreement involuntarily or unknowingly. *See Milligan v. Bd. of Trs. of S. Ill. Univ.*, 686 F.3d 378, 386 (7th Cir. 2012) ("Milligan did not make that argument, either here or in the district court. His failure to do so forfeits the argument.").

We find that the district court correctly concluded that the handwritten agreement was enforceable because the agreement sufficiently defines the parties' intentions and obligations. The material terms in the agreement clearly provide that Beverly offered to "resolve this matter"—i.e., vol-

No. 15-1098 7

untarily dismiss her alienage and disability claims—if Abbott paid $210,000 and mediation costs. *See Elustra v. Mineo*, 595 F.3d 699, 709 (7th Cir. 2010) ("We find that the material terms were definite and certain: defendants would pay $6,000 to the Elustras in exchange for their dismissal of the lawsuit."). It also states that Abbott had five days within which to accept Beverly's offer, which it did the following day. Both parties and their respective attorneys signed the agreement, further demonstrating their intent to be bound by the terms of the document. And the elated response of Beverly's counsel to Abbott's acceptance further underscores the parties' understanding that the handwritten agreement would settle Beverly's claims.

Beverly contends that the district court erred in relying on cases such as *Elustra v. Mineo* that involve oral agreements because the agreement at issue here was handwritten, not oral. But Beverly fails to cite a single case to support this contention, much less explain why the oral-versus-written distinction is relevant here. This failure amounts to forfeiture. *See United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991) (holding that "perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority," are forfeited on appeal). Forfeiture aside, our cases counsel that the relevant inquiry is whether the agreement at issue is sufficiently clear regarding its material terms, not whether the agreement was captured in writing. *Compare Abbott Labs.*, 164 F.3d at 388 (involving preliminary written agreement), *and Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 564 (7th Cir. 2012) (same), *with Elustra*, 595 F.3d at 708–09 (involving preliminary oral agreement), *and Dillard*, 483 F.3d at 507–08 (same).

### B. Typewritten Proposal Does Not Affect Enforceability

Beverly argues that the twenty-one-day consideration period and the seven-day revocation period in the typewritten proposal demonstrate that Abbott intended to be bound only if the typewritten proposal was executed. But this argument ignores the fact that the "anticipation of a more formal future writing does not nullify an otherwise binding agreement." *Abbott Labs.*, 164 F.3d at 388 (citing *Dawson v. Gen. Motors Corp.*, 977 F.2d 369, 374 (7th Cir. 1992)). Indeed, we have observed that "Illinois courts have not been shy about enforcing promises made in the context of ongoing negotiations and often involving preliminary or 'incomplete' agreements." *Dawson*, 977 F.2d at 374 (collecting cases). We agree with the district court that the parties' failure to execute the typewritten proposal simply left the handwritten agreement's enforceability undisturbed.

Beverly's reliance on *Ocean Atlantic Development Corp. v. Aurora Christian Schools*, 322 F.3d 983 (7th Cir. 2003), is misplaced. *Ocean Atlantic* involved two offer letters that, instead of triggering certain key obligations and events themselves, merely *anticipated* the triggering of these obligations and events by the future execution of an anticipated contract. *Id.* at 997–99 (observing that both offer letters stated they "will serve to set forth some of the parameters for an offer," and that inspection, default, and refundability of the earnest money deposit all depended on the future execution of a contract and not of the offer letters). Here, however, neither the text of the handwritten agreement nor the parties' prior dealings demonstrate that the parties believed their mutual

obligations were dependent upon the future execution of a final contract with additional terms.

Beverly also argues that the handwritten agreement is not enforceable because it omits certain purportedly material terms that appear in the subsequent draft proposal. We disagree.

A settlement agreement may be enforceable despite the omission of certain terms so long as those terms are not material. *See Wigod*, 673 F.3d 547, 564 (7th Cir. 2012) (observing that "[a] contract may be enforced even though some contract terms may be missing or left to be agreed upon" (citing *Acad. Chi. Publishers v. Cheever*, 578 N.E.2d 981, 983–84 (Ill. 1991))); *Pritchett v. Asbestos Claims Mgmt. Corp.*, 773 N.E.2d 1277, 1282 (Ill. App. Ct. 2002) ("Every feasible contingency that might arise in the future need not be provided for in a contract for the agreement to be enforceable…. Ambiguity will prevent the enforcement of a contract only where the ambiguity affects the material terms of the contract.").

Beverly appears to concede—as she must—that the payment of $210,000 and mediation fees and the dismissal of the case are material terms. But she argues that additional terms were required to communicate the parties' fundamental obligations—specifically, provisions relating to indemnification, future cooperation between the parties, Beverly's future employment options with Abbott, the precise allocation of settlement funds, and express language concerning release and waiver. However, these various provisions, taken together, constitute nearly the *entire* six-page typewritten proposal; certainly they are not all equally essential. *See Rose v. Mavrakis*, 799 N.E.2d 469, 473–74 (Ill. App. Ct. 2003) (stating that "[t]he lack of nonessential details … will not render a

contract unenforceable"); *Dillard*, 483 F.3d at 508 ("The materiality of additional written terms introduced after an oral agreement is reached is not established simply by one party's intransigence or 'refusal to budge' on the new terms."). Beverly implicitly acknowledges this when she refers to indemnification, cooperation, and future employment in cursory fashion, with no attempt to explain how any of these issues are so vital that the parties would not have settled the dispute without them. We therefore reject Beverly's suggestion that the handwritten agreement is unenforceable due to its silence regarding indemnification, cooperation, and future employment. *See Berkowitz*, 927 F.2d at 1384.

It bears mentioning that a transcript (or some other recording) of the private mediation session here may have provided important clarity regarding the parties' beliefs and intentions relating to the handwritten agreement and the draft proposal. We encourage future litigants to record any communications that directly relate to final settlement agreements.

We now turn to the remaining provisions concerning waiver and allocation that Beverly contends are material. Beverly argues that the handwritten agreement was not intended to be final because it lacked the waiver-and-release language that the typewritten proposal describes as "an essential and material term of this Agreement and that, without this provision, no agreement would have been reached by the parties." But the handwritten agreement states that Beverly demanded $210,000 and mediation costs "to resolve this matter." Though perhaps inartful, this phrase adequately conveys Beverly's offer to abandon her claims against Abbott; the use of formal terms such as "waiver," "release,"

and "covenant not to sue" was unnecessary—at least regarding the claims Beverly alleged in her complaint. *See Wilson v. Wilson*, 46 F.3d 660, 667 (7th Cir. 1995) (holding that a settlement agreement in which the plaintiff agreed to drop all claims against the defendants in exchange for a specific sum of money was enforceable, despite the fact that the agreement did not specify whether the plaintiff's promise would take the legal form of a release or a covenant not to sue).

The other purportedly material term that Beverly focuses on is allocation. Specifically, she contends that the allocation of the $210,000 between backpay (which is taxable) and damages (which are not taxable) is a material term, and that the handwritten agreement's silence on this issue renders it unenforceable. We conclude, however, that Beverly forfeited this argument by failing to raise it with the district court. In its motion to enforce the settlement agreement, Abbott stated that at the mediation, the parties agreed that a portion of the settlement amount would be paid directly to Beverly's attorneys, and that the remaining amount would be split equally between backpay and damages. In her opposition brief, Beverly failed to rebut this statement or otherwise reference allocation, and the only purportedly "material" terms she identified were, by her own admission, *non-financial* in nature. This failure amounts to forfeiture for purposes of this appeal. *See Milligan*, 686 F.3d at 386.

Beverly proffers several arguments for why forfeiture has not occurred, but none are availing. Beverly suggests that the district court considered and ruled on the allocation issue because the typewritten proposal, which contains an allocation provision, was included as an exhibit in Beverly's opposition brief. But neither party expressly referenced this

provision in its briefs, and the district court was under no obligation to identify and analyze every possible way in which the provision could be employed to either party's benefit. *See Williams v. Dieball*, 724 F.3d 957, 963 (7th Cir. 2013) ("Judges are not clairvoyant, and if they were required to go out of their way to analyze every conceivable argument not meaningfully raised, their work would never end."). Nor was the allocation issue preserved simply because Abbott briefly raised the issue. *See id* at 962 (reasoning that "to find that one party's argument was preserved because his *opponent* defended against it out of an abundance of caution would be to punish the opponent for being more thorough"). In addition, Beverly invites us to interpret the list of purportedly material provisions she identified in her opposition brief as non-exhaustive, and to read allocation into that list. We decline to do so. *See Fednav Int'l Ltd. v. Cont'l Ins. Co.*, 624 F.3d 834, 841 (7th Cir. 2010) (emphasizing that "a party has waived the ability to make a specific argument for the first time on appeal when the party failed to present that specific argument to the district court, even though the issue may have been before the district court in more general terms").

Beverly suggests that, despite her failure to raise the allocation issue with the district court, we may nevertheless reach the issue by exercising our discretion. "We may consider a forfeited argument if the interests of justice require it, but it will be a 'rare case in which failure to present a ground to the district court has caused no one—not the district judge, not us, not the appellee—any harm of which the law ought to take note.'" *Russian Media Grp., LLC v. Cable Am., Inc.*, 598 F.3d 302, 308 (7th Cir. 2010) (quoting *Amcast Indus. Corp. v. Detrex Corp.*, 2 F.3d 746, 749–50 (7th Cir. 1993)). Here,

No. 15-1098 13

Beverly's failure to raise the allocation issue with the district court precluded the parties from further developing the record on the issue, and reasonably permitted the district court to infer that the issue was not so important to the parties as to constitute a material term. Beverly does not offer any reason on appeal that warrants the exercise of discretion here, and we decline to invent one. *See S.E.C. v. Yang*, 795 F.3d 674, 679 (7th Cir. 2015) (holding that discretionary review was improper, in part, because the party "made no attempt to demonstrate why his case qualifies as one of these" rare cases).

### III. CONCLUSION

The judgment of the district court is AFFIRMED.